Brian K. ELLIS *v.* Larry NORRIS

97-104                                               968 S.W.2d 609

Supreme Court of Arkansas
Opinion delivered May 7, 1998

Appellant, *pro se.*

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

PER CURIAM. In 1992, the appellant, Brian Ellis, pleaded guilty to delivery of a controlled substance and was sentenced to twenty-five years' imprisonment. At the time that Ellis entered his guilty plea, inmates in the Department of Correction could earn "good time" credits that could be applied toward the reduction of their sentences. One form of good time credit was awarded automatically by the Department to prisoners who were classified into one of four categories. The other form of good time credit was discretionary meritorious good time, or "extra good time," which could be awarded if a prisoner, among other things, completed rehabilitative programs or performed special jobs. In 1993, however, the General Assembly passed Acts 536 and 558. Both of these acts, which became effective on January 1, 1994, repealed "extra good time."

In April of 1996, Ellis filed a *pro se* petition for a declaratory judgment and a petition for a writ of mandamus in the Circuit Court of Jefferson County. In the petition, Ellis alleged that Acts 536 and 558 were *ex post facto* legislation because they were applied retroactively to deny him the ability to earn extra good time. As exhibits to his petition, Ellis attached copies of letters in which his application for "extra good time" was denied by the Department of Correction. The Circuit Court denied Ellis's petition. Ellis now appeals *pro se* from that order.

In his argument on appeal, Ellis contends that Acts 536 and 558 violate the *ex post facto* clauses of the United States Constitution and the Arkansas Constitution. Ellis relies on the premise, which has been suggested in some of the opinions of the United States Supreme Court, that any law which is retroactively applied to the petitioner's disadvantage, or which affects the opportunity for an early release from prison, is in violation of the *ex post facto* legislation clause of the Constitution of the United States.

In response, the State first concedes that the Acts 536 and 558 have been retroactively applied to prisoners who were convicted before January 1, 1994. The State argues, however, that the United States Supreme Court has retreated from the position upon which Ellis relies, and now focuses on whether a law alters the definition of criminal conduct or increases the penalty by which a crime is punishable. The State contends that because the retroactive application of Acts 536 and 558 does neither, the *ex post facto* clauses are not violated.

Article 1, § 10, of the United States Constitution provides that "[n]o state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts. . . ." Article 2, § 17, of the Arkansas Constitution similarly provides, "No . . . ex post facto law . . . shall ever be passed . . . ." Ellis does not offer any argument, and none is readily available to us, showing why we should interpret the ex post facto doctrine in a manner different from the interpretation of the parallel provision in the United States Constitution by the United States Supreme Court.

■ In *Calder v. Bull*, 3 Dall. 386 (1798), Justice Chase explained the four categories of legislative acts that would violate the *Ex Post Facto* Clause:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

Over a century later, the Supreme Court succinctly restated these principles in *Beazell v. Ohio*, 269 U.S. 167 (1925):

> The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

Thus, according to *Calder* and *Beazell*, a law is in violation if it is retroactive and it disadvantages the accused by altering the definition of criminal conduct or by increasing the punishment for the crime. *See also Collins v. Youngblood*, 497 U.S. 37 (1990); *Lynce v. Mathis*, 519 U.S. 433 (1997).

The United States Supreme Court has disapprovingly noted, however, that some of its opinions have broadened the categories to include those measures which retroactively impose another form of disadvantage on the accused. In *Collins v. Youngblood*, *supra*, the Court expressly overruled two cases, *Kring v. Missouri*, 107 U.S. 221 (1883), and *Thompson v. Utah*, 170 U.S. 343 (1898), which added "any change which 'alters the situation of a party to his disadvantage'" to the *Calder v. Bull* analysis.

While the Court in *Collins v. Youngblood* attempted to clarify the *Ex Post Facto* Clause by reaffirming the analysis set forth in

*Calder v. Bull* and *Beazell v. Ohio*, the confusion persists because of the difficulty in determining whether the disadvantage suffered by the accused "alters the definition of criminal conduct or increases the punishment for the crime," or whether it is another form of disadvantage that would fall short of the sort requiring relief under the *Ex Post Facto* Clause. We must make that determination in this case.

The specific issue that must be decided is whether the retroactive application of the amendment that takes away a prisoner's ability to earn "extra good time" actually increases the punishment for the crime for which Ellis was convicted, thereby violating the *Ex Post Facto* Clause. Clearly, Mr. Ellis is disadvantaged by the retroactive application of the amendment because he has lost the opportunity to earn extra good time that can be applied toward the reduction of his sentence. What we must decide, however, is whether that disadvantage is the kind that is prohibited by the *Ex Post Facto* Clause.

In his argument on appeal, Ellis relies on *Weaver v. Graham*, 450 U.S. 24 (1981). In that case the Supreme Court held that an amendment that retroactively shortens the amount of automatic good time that can be earned by a prisoner violates the *Ex Post Facto* Clause. Although *Weaver* dealt with automatic good time rather than discretionary good time, it provides Ellis with the following helpful language:

> We have previously recognized that a prisoner's eligibility for reduced punishment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.
>
> ***
>
> In *Lindsey v. Washington*, [citation omitted], we reasoned that "(i)t is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the . . . prison term." Here, petitioner is similarly disadvantaged by the reduced opportunity to shorten his time in prison simply through good conduct.

Ellis contends that the Court in *Weaver* recognized that a measure that retroactively affects a prisoner's opportunity to reduce his prison term is the kind of disadvantage that is prohibited by the *Ex Post Facto* Clause. Since Acts 536 and 558 retroactively eliminate his opportunity to reduce his sentence through the accrual of "extra good time," Ellis argues that *Weaver* is controlling.

■ In *California Department of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597 (1995), however, the Supreme Court observed that the language in the *Weaver* opinion was inconsistent with its decision in *Collins v. Youngblood*, and most important, that it was unnecessary to the outcome of the case. In a footnote, the Court wrote:

> Our opinions in *Lindsey, Weaver, and Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of the accused offenders. [citations omitted] *But that language was unnecessary to the results of those cases and is inconsistent with the framework developed in Collins v. Youngblood.* [citation omitted] [emphasis added]. After *Collins* the focus of the *ex post facto* inquiry is not on whether a legislative change produces some, ambiguous sort of "disadvantage," nor as the dissent seems to suggest, on whether an amendment affects a prisoner's "*opportunity* to take advantage of early release," [citation omitted], but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

We think a fair interpretation of this footnote is that it was not a disadvantage in the form of the lost opportunity to reduce the prison sentence that was dispositive in *Weaver*. Rather, it was the fact that a reduction in the amount of good time that was automatically awarded operated to increase the length of time Weaver would be in prison. In other words, the disadvantage suffered by Weaver, in the form of an increase in the punishment for his crime, is within the scope of the *Ex Post Facto* Clause. Consequently, *Weaver* is not helpful to Ellis unless the repeal of "extra good time" actually operates to increase his sentence, rather than merely remove his opportunity to reduce his time in prison. We hold that it does not.

Pursuant to Act 273 of 1987, upon recommendation by a committee of the Board of Correction, "the director may recom-

mend to the Board of Correction up to ninety (90) additional days of meritorious good time awards for such completion(s) as rehabilitative programs, special jobs performed, and/or as a result of heroic acts or other exceptional circumstances." In other words, by performing one of the acts specified in the statute, a prisoner had the opportunity to add to the meritorious good time that he has earned automatically. It is clear from the wording of the statute, however, that the time was also awarded at the discretion of the Director.

We conclude that when Act 273 was repealed in 1993, all that was lost was the opportunity to earn discretionary good time toward the reduction of a prison sentence. Ellis has not demonstrated, moreover, that the Department of Correction denied him any extra good time that had already been recommended by the Director. Accordingly, it can not be said that Acts 536 and 558 operated to increase his sentence.

Affirmed.