Mr. Leroy Brownlee, Chair Post Prison Transfer Board P.O. Box 34085 Little Rock, AR 72203
Dear Mr. Brownlee:
You have requested an Attorney General opinion concerning Act 1035 of 1999, which amended A.C.A. § 16-93-206(c), the statute that addresses eligibility for discretionary transfer. Act 1035 went into effect on July 30, 1999. The first section of the Act amended A.C.A. § 16-93-206(c)(1) to state:
 Persons who commit the following felonies on or after January 1, 1994, shall be eligible to be considered for discretionary transfer to the Department of Community Punishment by the Post Prison Transfer Board after having served one-third (1/3) or one-half (1/2), with credit for meritorious good time, of their sentences, depending on the seriousness determination made by the Arkansas Sentencing Commission, or one-half (1/2), with credit for meritorious good time, of the time to which their sentences are commuted by executive clemency:
A.C.A. § 16-93-206(c)(1) (as amended by Act 1035 of 1999). The Act goes on to set forth the amended list of crimes the committers of which can now be considered for discretionary transfer. The practical effect of this amended list is that it expands the list of inmates whose status will be subject to the discretion of the Post Prison Transfer Board. That is, the amended list has the effect of subjecting some inmates to the Board's discretion who previously would have been eligible for transfer eligibility automatically.
In light of this amendment, you have asked:
 What is the status of Act 1035 as it relates to the time frame of January 1, 1994, forward?
It is my understanding that there is concern as to whether the Act should apply only to inmates who commit the listed crimes after the effective date of the Act, or whether the Act should be interpreted to affect inmates who committed the crimes before the effective date of the Act, but after January 1, 1994.
It is my opinion that Act 1035 must not be applied to any inmate who committed a listed crime before the effective date of the Act (even those who committed a listed crime after January 1, 1994). It must be applied only to inmates who committed such crimes after the effective date of the Act. If the Act were applied to inmates who committed their crimes before the effective date of the Act, it would, in my opinion, constitute an ex post facto law, in violation of Article 1, § 10 of the U.S. Constitution, and Article 2, § 17 of the Arkansas Constitution.
The Arkansas Supreme Court has recently discussed the issue of whether a change in the law affecting an inmate's transfer eligibility after he has been sentenced constitutes a violation of the ex post facto prohibition. In Ellis v. Norris, 333 Ark. 200, 968 S.W.2d 609 (1998), an inmate argued that the repeal of laws that would have given him an opportunity to reduce his sentence by earning extra good time (in addition to the good time that he was granted automatically) constituted an ex post facto violation. The inmate relied upon Weaver v. Graham, 450 U.S. 24 (1981), in which the United State Supreme Court had held that an amendment that retroactively shortens the amount of automatic good time that can be earned by a prisoner violates the Ex Post Facto Clause of the U.S. Constitution.[1] In analyzing Weaver and other decisions of the U.S. Supreme Court regarding ex post facto laws, the Arkansas Supreme Court concluded that under Weaver and those other U.S. Supreme Court decisions, a law violates the ex post facto prohibition if it has the effect of increasing an inmate's sentence (as opposed to merely depriving the inmate of an opportunity to reduce his sentence). The Arkansas Supreme Court therefore held that Ellis' reliance on Weaver was misplaced if he could not establish that the change in the Arkansas law had the effect of increasing his sentence, as opposed to merely removing his opportunity to reduce his time in prison. The court held that the repeal of these "extra good time" laws did not have the effect of increasing Ellis' sentence, because the repeal merely removed his opportunity to reduce his time in prison.
However, the Ellis court also made clear that a revocation or reduction in automatic eligibility for transfer (such as had occurred in Weaver)would constitute an increase in the inmate's sentence. See Footnote 1. It can thus be concluded that such a revocation (or reduction) in an inmate's automatic eligibility for transfer can be deemed to violate the ex post facto prohibition.
If Act 1035 is applied to inmates who committed their crimes before the effective date of the Act, it would not merely have the effect of removing certain inmates' opportunity to reduce their sentences; it would actually revoke the automatic eligibility for early transfer to which they had previously been entitled. Thus, under the reasoning of Weaver
and Ellis, supra, I must conclude that the Act would actually increase the length of such inmates' incarceration, and if applied to them, would constitute an unconstitutional ex post facto law. Act 1035 therefore must not be applied to any inmate who committed one of the listed crimes before the effective date of the Act (including those who committed their crimes after January 1, 1994). Rather, the Act must be applied only to inmates who committed their crimes after the effective date of the Act.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] It should be noted that the U.S. Supreme Court clarified inCalifornia Department of Correction v. Morales, ___ U.S. ___,115 S.Ct. 1597 (1995), that the holding of Weaver was not based upon the inmate's loss of opportunity to reduce his sentence, but rather upon the inmate's loss of an automatic reduction in his sentence. The Arkansas Supreme Court noted this clarification in Ellis, stating:
 We think a fair interpretation of this footnote [in Morales] is that it was not a disadvantage in the form of the lost opportunity to reduce the prison sentence that was dispositive in Weaver. Rather, it was the fact that a reduction in the amount of good time that was automatically awarded operated to increase the length of time Weaver would be in prison. In other words, the disadvantage suffered by Weaver, in the form of an increase in the punishment for his crime, is within the scope of the Ex Post Facto Clause.
Ellis, 333 Ark. at 205.