Teddy GRAHAM *v.* Larry NORRIS, Director,
Arkansas Department of Correction

98-1124                                                        10 S.W.3d 457

Supreme Court of Arkansas
Opinion delivered February 17, 2000

*Appellant*, pro se.

*Winston Bryant*, Att'y Gen., by: *Darnisa Evans Johnson*, Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. This appeal represents the last in a trilogy of cases in which inmates contend they were unlawfully denied meritorious good time when the General Assembly enacted what Teddy Graham contends to be *ex post facto* legislation. *Duncan v. State*, 337 Ark. 306, 987 S.W.2d 721 (1999); *Ellis v. Norris*, 333 Ark. 200, 968 S.W.2d 609 (1998). Our court took jurisdiction of this case to interpret certain Arkansas acts and statutes that deal with prisoners' meritorious good time and to determine if those laws, or the State's application of them, have violated Arkansas's or the United States' *Ex Post Facto* Clauses. Ark. Sup. Ct. R. 1-2(b).

In June of 1986, appellant Teddy Graham was convicted of aggravated robbery and of being a felon in possession of a firearm and given a forty-year sentence. While serving his sentence, Graham was transferred pursuant to the Interstate Corrections Compact (Ark. Code Ann. § 12-49-101 (Repl. 1999)) to the Ellis County Jail in Arnett, Oklahoma; during his confinement there, he performed volunteer work authorized under Ark. Code Ann. § 12-30-408 (1987). Before its repeal, § 12-30-408 provided that inmates who engaged in volunteer work shall earn an additional day of *meritorious good time* for every day engaged in the volunteer time. (Emphasis added.)

Section 12-30-408, the law under which Graham earned 544 days of meritorious good time, was repealed in 1989 by Act 503. That Act reads as follows:

> SECTION 1. Arkansas code 12-30-408 is hereby repealed.
>
> * * *
>
> SECTION 4. Emergency. It is hereby found and determined by the General Assembly that Arkansas Code 12-30-408 establishes good time credit for contractual and volunteer work by inmates at a higher rate than is provided for job assignments within the Department of Correction; that this law creates inequities that are detrimental to the overall operations of the Department of Correction; that Arkansas Code 12-29-202 makes adequate provision for good time awards; and that this Act should be given immediate effect in order to clarify the law as soon as possible.

Although § 12-30-408 had been repealed in 1989, Graham performed and accumulated 544 days of volunteer work at the Oklahoma facility during the period between February 1, 1995, and July 29, 1996. Graham claimed entitlement to these days under § 12-30-408 because that statute was in effect at the time he committed the crimes for which he was convicted in 1986. Sometime in 1996, he first petitioned the Arkansas Records Supervisor of the Diagnostic Unit to credit his records with 544 days of meritorious good time. This request was denied, and his next request was again rejected by the warden of the unit. Graham's request was finally denied by the Assistant Director of Institutional Services on the grounds that § 12-30-408 had been repealed.

On January 9, 1998, Graham filed a petition for declaratory judgment and writ of mandamus in the Jefferson County Circuit Court where he claimed the 544 days in good-time credit, and contended that Act 503, which repealed § 12-30-408, violated the *Ex Post Facto* Clauses of the Arkansas and United States Constitutions. On June 29, 1998, the circuit court denied Graham's claims for relief because the good-time credit he sought resulted from a program which was available to an inmate at the State's discretion and was thus not mandatory. For this reason, the trial court held that the State's withdrawal of that volunteer-work program and good time did not violate the *Ex Post Facto* Clauses.

In this appeal, Graham continues his argument that Act 503 violated the *Ex Post Facto* Clauses because its retroactive application worked to his disadvantage by extending his period of confinement before he is eligible for release or parole and by increasing his punishment. He also cites Ark. Code Ann. § 16-93-607(4) (1987), and submits this statute mandates that he must serve three-fourths of his sentence, with credit for good-time allowances, before he can be released on parole. Section 12-30-408's repeal, he argues, eliminated his ability to reduce his maximum term.

Graham's arguments are almost identical to the ones we dealt with in our recent *Ellis* and *Duncan* decisions. In *Ellis*, the prisoner challenged as *ex post facto* Acts 536 and 558 of 1993, which repealed "good-time allowances" provided in Act 273 of 1987. Act 273 permitted prisoners extra good time when they completed rehabilitative programs or performed special jobs. Prisoner Ellis premised his constitutional argument on the case of *Weaver v. Gra-*

*ham*, 450 U.S. 24 (1981), where the Supreme Court pointed out that "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29. Our court rejected Ellis's arguments, but, in doing so, distinguished *Weaver* from Ellis's situation because the *Weaver* case dealt with *automatic* good time, rather than the *discretionary* good time Ellis would earn under Arkansas's law. In disposing of Ellis's arguments, our court further discussed the Supreme Court's more recent case of *California Department of Corrections v. Morales*, 514 U.S. 499 (1995). There, the Supreme Court observed that its language in the *Weaver* opinion was inconsistent with its decision in *Collins v. Youngblood*, 497 U.S. 37 (1990), and in a footnote the court stated the following:

> Our opinions in *Lindsey, Weaver* and *Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of the accused offenders. [citations omitted] *But that language was unnecessary to the results of those cases and is inconsistent with the framework developed in* Collins v. Youngblood. [citation omitted] [emphasis added]. After *Collins* the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "*opportunity* to take advantage of early release," [citation omitted], but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

We considered the foregoing language in our *Ellis* case and interpreted it as follows:

> We think a fair interpretation of this footnote is that it was not a disadvantage in the form of the lost opportunity to reduce the prison sentence that was dispositive in *Weaver*. Rather, it was the fact that a reduction in the amount of good time that was automatically awarded operated to increase the length of time Weaver would be in prison. In other words, the disadvantage suffered by Weaver, in the form of an increase in the punishment for his crime, is within the scope of the *Ex Post Facto* Clause. Consequently, *Weaver* is not helpful to Ellis unless the repeal of "extra good time" actually operates to increase his sentence, rather than merely remove his opportunity to reduce his time in prison. We hold that it does not.

*Ellis*, 333 Ark. at 205, 968 S.W.2d at 611–12.

In conclusion, the *Ellis* court stated that Act 273 of 1987 provided that "the director *may* recommend ... good time awards" for completing rehabilitation programs and special jobs, and by performing such acts, a prisoner had the *opportunity* to add to the meritorious good time he has earned automatically. We further held in *Ellis* that when Act 273 was repealed in 1993, all that was lost was the *opportunity* to earn discretionary good time which was not violative of the *Ex Post Facto* Clauses. In *Duncan*, 337 Ark. 306, 987 S.W.2d 721 (1999), we reached the same decision on almost identical facts.

Graham argues that, while the good–time credits provided in the *Ellis* and *Duncan* cases may be discretionary under Act 273, the extra good time earned here under § 12–30–408 is mandatory, not discretionary. Graham cites to the language in § 12–30–408, which in relevant part, provides as follows:

> Inmates who engage in volunteer work by contractual agreement with state departments, agencies, counties, school districts, civic organizations, and other non-profit organizations, *shall* earn an additional day of meritorious good time for every day engaged in volunteer work. (Emphasis added.)

Relying on the above provision, Graham urges that an inmate's good time earned under § 12–30–408 is mandatory and not discretionary, and as such, Act 503's repeal of § 12–30–408 operates as an *ex post facto* law which deprives him of 544 days' credit earned under the statute. We disagree.

As we pointed out in *Ellis*, an inmate, whether under Arkansas's prior special programs provided in Act 273 or § 12–30–408 before their repeal, had the opportunity to add meritorious good time to that which he had earned automatically. However, it is clear from the wording of those laws that the time earned and awarded was at the discretion of the Director. *Ellis*, 333 Ark. at 206, 968 S.W.2d at 612.

In the present case, when Arkansas's volunteer work program was authorized under § 12–30–408, other related statutes and regulations were in effect that explained the discretionary nature of the good time earned by a prisoner under such a program. For

example, Ark. Code Ann. § 12-30-401 (1987)[1] prescribed that inmates committed to the Department of Correction for institutional care be required to participate in the various work programs and *may* be afforded vocational training and rehabilitative opportunities in accordance with the rules, regulations, and procedures promulgated by the Director, with the approval of the Board of Correction. The Board's regulation bearing on meritorious good time when § 12-30-408 was law stated as follows:

> Meritorious Good Time is *not* something to which an inmate is entitled as a matter of right, but is awarded in proportion to his good discipline, good behavior, work practices, and job responsibilities. (Emphasis added.) Department of Correction Regulation 826.

The foregoing regulation was promulgated pursuant to Act 50 of 1968, as amended, which encompassed the laws that established the volunteer work and meritorious good time provided under § 12-30-408. Also consistent with the discretionary nature of Arkansas's laws providing for extra or meritorious good time was Ark. Code Ann. § 12-29-201 (1987), which was in effect when § 12-30-408 was law.[2] Section 12-29-201 provided (and still provides) that an inmate *may* be entitled to a reduction, to be known as "meritorious good time" from his maximum term and parole eligibility date of up to thirty days for each month served in one of the institutions maintained by the Department of Correction.

In sum, Graham's situation, while involving a different statute, § 12-30-408, is controlled by the same analysis and rationale we expressed in our holdings in *Ellis* and *Duncan*. When the General Assembly passed Act 503 to repeal § 12-30-408, Graham merely lost what was the opportunity to earn discretionary good time towards the reduction of his prison sentence. Therefore, we agree and affirm the trial court's ruling that such a lost opportunity did not violate the *Ex Post Facto* Clauses.

BROWN and IMBER, JJ., concur.

---

[1] Now appears at Ark. Code Ann. § 12-30-401 (Repl. 1999).

[2] Now recodified with other provisions at Ark. Code Ann. § 12-29-201 (1999). The recent codification reflects changes the General Assembly made in 1993 by Acts 536 and 558 which, among other things, clarified that meritorious good time will not be applied to reduce the length of a sentence *See* § 12-29-201(c).

ROBERT L. BROWN, Justice, concurring. I do not disagree with the majority's analysis. However, there is one other factor in this case that distinguishes it from *Duncan v. State*, 337 Ark. 306, 987 S.W.2d 721 (1999) (*per curiam*), and *Ellis v. Norris*, 333 Ark. 200, 968 S.W.2d 609 (1998) (*per curiam*). Graham was serving time in the Ellis County Jail in Oklahoma under the Interstate Compact. Six years after the Arkansas statute authorizing meritorious good time for volunteer work was repealed, Graham began doing volunteer work in Oklahoma for the city, county, and school district. *See* Ark. Code Ann. § 12-30-408 (1987) (referred to as Act 309), *repealed by* Act 503 of 1989. As his supervisor in the county jail pointed out by affidavit, Graham was not required to work but did so voluntarily. The record does not reflect that the Arkansas Department of Correction was aware of Graham's volunteer work. In fact, during Graham's subsequent grievance proceeding in 1997, Warden Harris denied relief because "No Act 309 shows at anytime."

The Arkansas Department of Correction should not be held responsible for volunteer work done in Oklahoma, which was not done under its auspices or rules or with its blessing. It is quite a stretch in my judgment for Graham to argue that Arkansas enhanced his punishment by denying this good time, when Graham was performing the volunteer services unbeknownst to the Department.

I concur for the reasons stated by the majority but also for this additional reason.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority's holding, but write only to point out a difference between the present case and the cases of *Ellis* and *Duncan*. The statute at issue in *Ellis* and *Duncan*, Act 273 of 1987, provided that meritorious good time could be awarded at the discretion of the Director if a prisoner, among other things, completed rehabilitative programs or performed other special jobs. The statute at issue here provides that inmates who are engaged in volunteer work "shall earn an additional day of meritorious good time for every day engaged in volunteer work." Although the language of section 12-30-408(a) appears mandatory, nothing in the statutory scheme suggests that an inmate will automatically be entitled to or qualify for the opportunity to engage in a volunteer-work program.

Rather, an inmate's opportunity to engage in a volunteer work program is solely at the discretion of the Department of Correction. Therefore, by repealing § 12-30-408, Mr. Graham only lost the opportunity to earn discretionary good time toward the reduction of his prison sentence. For this reason, I agree with the trial court that the State's withdrawal of the volunteer work program and good time did not violate the *Ex Post Facto* Clauses in the Arkansas Constitution and the United States Constitution.