# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3850

_____

Brian K. Ellis,                                          *
                                                         *
        Appellant,                                   *
                                                         *  Appeal from the United States
        v.                                           *  District Court for the
                                                         *  Eastern District of Arkansas.
Larry Norris, Director, Arkansas                         *
Department of Correction,                                *
                                                         *
        Appellee.                                    *

_____

Submitted: September 13, 2000
Filed: November 9, 2000

_____

Before BOWMAN and BEAM, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Effective January 1, 1994, the State of Arkansas repealed a statute that had previously afforded prison officials the discretion to award additional good-time credits to prisoners. See House Act of March 16, 1993, 1993 Ark. Acts 536 § 6; Senate Act of March 16, 1993, 1993 Ark. Acts 558 § 6. Brian K. Ellis, convicted and sentenced in 1992, brought suit claiming that because the repeal took away his ability to be awarded these additional good-time credits the legislation represented an <u>ex post facto</u>

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

violation of his rights. The Arkansas Supreme Court made a thorough review of the relevant precedent and held that the repeal did not represent an ex post facto violation under either the Arkansas or United States Constitution. See Ellis v. Norris, 968 S.W.2d 609 (Ark. 1998). The sole issue under consideration in this habeas appeal is whether the Arkansas Supreme Court's determination of Ellis's claim under the Ex Post Facto Clause of the United States Constitution "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1994 & Supp. IV 1998). Finding the Arkansas Supreme Court's decision neither contrary to precedent nor unreasonable, the District Court[2] denied Ellis's habeas petition. We affirm.

I.

Brian Ellis entered a guilty plea for the delivery of a controlled substance and was sentenced to twenty-five years of imprisonment in the Arkansas Department of Correction (ADC) on December 8, 1992. At that time, Arkansas allowed prisoners in the ADC to earn credit toward the reduction of their prison term and parole eligibility date through a two-tier system. Meritorious good-time (regular good-time) credit, not at issue in this appeal, represented the primary type of credit. Inmates accrued this credit based purely on class status. See Ark. Code Ann. § 12-29-202(a)-(f) (Michie Supp. 1993) (repealed 1994). An ADC classification committee serves to place inmates into one of four classes based on "behavior, good discipline, medical condition, and job responsibility." Id. § 12-29-202(c). Inmates then accrue regular good-time

_____

[2]The Honorable George W. Howard, Jr., United States District Court for the Eastern District of Arkansas.

credit based on their assigned class,[3] up to a maximum of thirty days for each month served.  See id. § 12-29-201(a).

Arkansas law also allowed prison officials the discretion to award inmates additional meritorious good-time (extra good-time) credit based on the "completion of rehabilitative programs, special jobs performed, and/or as a result of heroic acts or other exceptional circumstances."  Id. § 12-29-202(f).  Unlike the classification schedule used for assigning regular good-time credit, extra good-time credit resulted only if the Board of Correction accepted recommendations from both the classification committee and the director of the ADC.  See id.  ("Upon recommendation of the classification committee, the director may recommend to the Board of Correction additional days of meritorious good time . . . .").

On January 1, 1994, the State of Arkansas repealed the statutory provision that had allowed the awarding of extra good time.  See 1993 Ark. Acts 536 § 6, 558 § 6. Ellis received all of the extra good time that he had accrued prior to the repeal and remained eligible to earn regular good time.  He concedes that the legislation only limited the discretion of prison officials to award extra good time after the repeal.

In 1996, Ellis initiated suit in Arkansas state court asserting that the legislation repealing extra good time represented an ex post facto violation because it retroactively removed his opportunity to be awarded extra good time.  The Arkansas Circuit Court denied relief and the Supreme Court of Arkansas affirmed the denial.  See Ellis, 968 S.W.2d at 612.  Ellis then sought relief in federal court by filing an application for a writ of habeas corpus under 28 U.S.C. § 2254, reiterating his claim that the repeal of extra good time provisions violated the Ex Post Facto Clause of the United States

---

[3]For each month served, prisoners could receive the following regular good-time credit:  30 days for Class I status, 20 days for Class II status, 8 days for Class III status, and no days for Class IV status.  See Ark. Code Ann. § 12-29-202(d).

Constitution. After careful consideration, the District Court denied Ellis's habeas petition.

## II.

This case derives from a habeas petition filed under 28 U.S.C. § 2254, subsequent to its amendment by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), and we accord the Arkansas Supreme Court's adjudication on the merits appropriate deference. See 28 U.S.C. § 2254(d). Therefore, we can only grant a writ of habeas corpus if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. Ellis presents no challenges to the Arkansas Supreme Court's determination of the facts, and thus we shall apply only the post-AEDPA standard for reviewing that court's legal conclusions. Using that standard, we review the District Court's conclusions of law de novo. See Whitmore v. Kemna, 213 F.3d 431, 432 (8th Cir. 2000).

## III.

The Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1.[4] The United States Supreme Court has determined that based on original understanding this provision serves to prohibit legislative acts that would "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). Thus, in order for an ex post facto violation to occur, a statute must be "retrospective—that

---

[4]The Constitution includes a similar prohibition of ex post facto laws passed by the federal government. See U.S. Const. art. I, § 9, cl. 3.

is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citation omitted) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)). In the instant appeal, the State of Arkansas concedes that the repeal of extra good-time credit applies retroactively, i.e., it applies to prisoners serving sentences imposed prior to the repeal, as well as to those serving sentences imposed afterwards. See Ellis, 968 S.W.2d at 610. Ellis does not allege any alteration of the criminal conduct for which he is being punished. The question that we must address then narrows to whether the Arkansas legislation that eliminates the opportunity to earn extra good time "increases the penalty by which a crime is punishable." California Dep't of Corrections v. Morales, 514 U.S. 499, 507 n.3 (1995); see also Johnson v. United States, 120 S. Ct. 1795, 1800 (2000) (finding that this part of the ex post facto claim requires proof that the legislation "raises the penalty from whatever the law provided when [the petitioner] acted").

Relying on the Supreme Court decision in Weaver, Ellis argues that the repeal of extra good time disadvantaged him by lengthening the time he might spend in prison and that it therefore increased the penalty for his crime. In Weaver, the Court held that a Florida statute represented an ex post facto violation when it reduced the amount of statutory good-time credits automatically provided to prisoners who maintained good behavior. See 450 U.S. at 35-36. Ellis contends that Weaver's reasoning with respect to statutory good time automatically conferred upon an administrative determination of good behavior applies equally to the discretionary good time in his case.

The Supreme Court of Arkansas distinguished Weaver based on the mandatory nature of the good-time credits at issue in that case, as well as the Supreme Court's refinement of the standard for determining when a prisoner is disadvantaged by a retroactive law. See Ellis, 968 S.W.2d at 611-12. The court initially determined that the repealed extra good-time credits were discretionary under the Arkansas statute. See id. at 609, 612. Ellis has not challenged the discretionary nature of the extra good-time

credits and we necessarily defer to the Arkansas Supreme Court's reading of an Arkansas statute.[5] See Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir.) (en banc) ("When the outcome of federal habeas litigation involves a matter of state law, a federal court is bound by a legal interpretation made by the state's highest court."), cert. denied, 120 S. Ct. 120 (1999). Further, the court acknowledged the line of subsequent Supreme Court cases that clarified Weaver's broad language concerning the disadvantages that amount to ex post facto violations. See Ellis, 968 S.W.2d at 611-12. Interpreting this precedent, the Arkansas Supreme Court noted that in Morales "the Supreme Court observed that the language in the Weaver opinion was inconsistent with its decision in Collins v. Youngblood, and most important, that it was unnecessary to the outcome of the case." Id. at 611. The court also recognized the Supreme Court's admonition in Morales that an ex post facto violation does not rest on an inmate's lost opportunity to reduce prison time, but rather only upon a finding that legislation retroactively modified the definition of or increased the penalty for an inmate's crime:

> After Collins, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor . . . on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

Morales, 514 U.S. at 506-07 n.3 (citation omitted), quoted in Ellis, 968 S.W.2d at 611. Thus, the Arkansas Supreme Court reasoned that "Weaver is not helpful to Ellis unless the repeal of 'extra good time' actually operates to increase his sentence, rather than merely remove his opportunity to reduce his time in prison." Ellis, 968 S.W.2d at 612. The court concluded that "all that was lost was the opportunity to earn discretionary

---

[5]Even if Ellis sought to challenge the determination that extra good time remained discretionary as a factual issue, he has submitted no evidence to overcome the presumption that the Arkansas Supreme Court's finding was correct. See 28 U.S.C. § 2254(e)(1).

good time toward the reduction of a prison sentence" and that "[a]ccordingly, it can not be said that Acts 536 and 558 [repealing extra good time] operated to increase his sentence." Id.

IV.

We find the Arkansas Supreme Court's decision neither "contrary to" nor "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 120 S. Ct. 1495, 1519-23 (2000) (defining the terms of § 2254(d)). The court first recognized the proper standard for determining when an ex post facto violation has occurred. It appropriately referenced the Supreme Court's pronouncement in Morales that after its decision in Collins the question is whether the legislative "change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." 514 U.S. at 507 n.3. Since Morales, the Supreme Court has continued to recognize this standard. See Johnson, 120 S. Ct. at 1800 (citing Morales when stating the standard for an ex post facto violation); Lynce, 519 U.S. at 443 (stating that in Morales the Court found that "the relevant inquiry is whether the 'change alters the definition of criminal conduct or increases the penalty by which a crime is punishable'").

We also agree with the Arkansas Supreme Court that Ellis's reliance on Weaver is unconvincing. The Supreme Court emphasized in Weaver, as well as in subsequent decisions, the mandatory nature of the good-time credits at issue in that case. See Weaver, 450 U.S. at 35 ("[U]nder both the new and old statutes, an inmate is automatically entitled to the monthly gain time simply for avoiding disciplinary infractions and performing his assigned tasks."); see also Lynce, 519 U.S. at 441-42 (discussing the statutory formula for the awarding of credits under the statute in Weaver); Morales, 514 U.S. at 506 (finding that in Weaver the "state statutes provided a formula for mandatory reductions to the terms of all prisoners who complied with certain prison regulations and state laws"). In contrast, the repealed Arkansas statute provided explicit discretion and no formulas for the awarding of extra good time. The classification committee or the director of the ADC could stop recommending extra good time altogether at any point whether or not a prisoner undertook the acts

-8-

necessary to qualify for the credits. Likewise, the exercise of discretion in awarding extra good time in the past imparted no requirement for officials to continue to make such awards in the future.[6] It would seem quite odd then that Arkansas legitimately could achieve the same ends in terminating the awards of extra good time simply through exercising its discretion, but that an explicit legislative statement ending such awards would represent an ex post facto violation. This demonstrates that, at best, the effect of the repeal created "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause." Morales, 514 U.S. at 509; see also Abed v. Armstrong, 209 F.3d 63, 66 (2d Cir.) (finding no ex post facto violation because "[u]nlike the statutes at issue in both Weaver and Lynce, [this statute] does not automatically confer the right to earn good time credit on all inmates [but r]ather . . . only that inmates 'may' earn good time credit, thereby rendering good time credit a discretionary matter") (citation omitted), cert. denied, No. 00-5309, 2000 WL 1053587 (Oct. 2, 2000).

We conclude that the Arkansas Supreme Court's decision is not "contrary to . . . clearly established Federal law" because the discretionary nature of the repealed extra good-time credit materially distinguishes it from any relevant Supreme Court precedent. 28 U.S.C. § 2254(d)(1); see also Williams, 120 S. Ct. at 1523 ("Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or . . . decides a case differently than this Court has on a set of materially indistinguishable facts."). The Arkansas Supreme Court also identified the proper legal standard and applied it in a reasonable fashion. See id. ("Under the 'unreasonable application' clause, a federal

---

[6]To hold otherwise would provide a one-way ratchet for the exercise of discretion and impermissibly tie the hands of states attempting to equitably administer their prison systems.

habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."). Accordingly, the judgment of the District Court denying Ellis's petition for a writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.